The Honorable Ted L. Strickland Chairman, Joint Budget Committee 341 State Capitol Denver, Colorado
Dear Senator Strickland:
QUESTIONS PRESENTED AND CONCLUSIONS
1. Can college councils override the will of the State Board for Community Colleges?
My conclusion is "no."
2. If a chief executive officer is appointed by the college council but disapproved by the State Board, does that officer have any authority?
My conclusion is "no."
ANALYSIS
I believe the following matters should be brought to your attention.
First, it should be noted that Mr. Bull also represents the former president of Morgan Community College in other litigation, under similar circumstances. Thus, he is not an entirely disinterested commentator.
Second, the matter does not stand quite as Mr. Bull has represented in his letter. The statute concerning community college governance is not muddled; although there have been disputes between some local councils and the State Board concerning their respective powers, the statute is quite clear. Section 23-60-202(1) provides that the State Board "has the authority, responsibility, rights, privileges, powers and duties customarily exercised by the governing boards of institutions of higher education. . . ." That section then enumerates, but not by way of limitation, certain specific functions comprehended within this broad delegation of governing authority.
In contrast, the statute providing for the college council, §23-60-206(2), confers upon the college council no authority, no responsibility, no rights, no privileges, no powers, but only certain specified duties. These are duties only, not prerogatives, and through no twist of the statutory language can it be contended that the college council can execute any of these duties in a manner contrary to the will of the State Board, which is the governing board, and the only governing board, of the state system of community colleges.
Some of the duties conferred upon the college council are somewhat more than advisory in nature, but it is impossible to conclude that any of these functions can be exercised in defiance of the State Board. With specific reference to the employment of college chief executives, § 23-60-206(2)(a) makes it the duty of the college council to "employ" the chief administrative officer, but to do so only "subject to the prior approval of the board."
In regard to the facts of the particular case of Dr. Hatton, the following observations are in order. Hatton had been employed as the president of El Paso Community College, and toward the end of his contract term, which expired at the end of June, 1974, the State Board pursuant to its procedures took formal action determining that his contract would not be renewed. The college council asserted a power to employ him in that capacity, notwithstanding this resolution of the State Board. Once the State Board had refused to authorize a new contract for Hatton's employment as president, the college council took action purporting to designate him as acting administrator of the college. Two days later the State Board took formal action specifically disapproving that action of the college council. All of this was done prior to the expiration of his current contract on June 30, 1974.
In spite of this, Hatton continued to claim during July of 1974 that he was chief administrative officer of the college pursuant to the college council's action. During July, negotiations took place between a representative of the state board, the college council, and Mr. Hatton to resolve the dispute. It was the Board's position that Mr. Hatton was illegally purporting to act during July as chief executive of the college, without any legal authority.
This position was reiterated in the agreement which ultimately resulted, and the board's position was not yielded by the terms of that agreement. The agreement reached final form in the closing days of July, 1974, but was not signed by Mr. Hatton until July 31, and was not presented to the State Board for approval until early in August. On the same day that he signed the agreement, by the terms of which Hatton surrendered all compensation for his service during the period in dispute, Hatton cashed a check paid to him by the college (unlawfully, in the State Board's view) for services as acting administrator during the month of July. On the advice of his counsel, Mr. Bull, Hatton cashed the check first, before signing the agreement, and Hatton now takes the position that the settlement agreement only waived his rights to future compensation, and not to compensation for the month of July.
The member of the State Board who negotiated the settlement agreement on behalf of the State Board was not aware of the July 31st paycheck, and has signed an affidavit stating his belief that Hatton actively concealed that fact from him with an intent to defraud the State Board. The July 31st check was discovered by the State Board before it approved the settlement agreement, and for this reason it directed that the amount of the July compensation (the check and other benefits which also had been paid) be deducted from the face amount of the settlement sum, $15,000.
Judge Byrne gave the settlement agreement a construction which, in our view, does violence to its terms; but he also did more. Nothing in the agreement surrenders the State Board's claim that Hatton's actions during July as purported "acting administrator" under the college council's claimed authorization was unlawful. Therefore, in addition to contesting Hatton's claim of entitlement to the set-off amount, we filed a counterclaim on behalf of the State Board for the amount unlawfully paid Hatton during July, in the event Hatton should prevail in his claim on the settlement contract.
The trial judge, in ruling against the State Board on this counterclaim, cast a very dark shadow over the State Board's power effectively to disapprove, and therefore preclude, the employment of a chief administrative officer by a college council. Not to appeal and seek reversal of this ruling would be to accept a serious affront to the statutory scheme and to invite further contests over the relative roles of Board and council under the statutes.
Neither we nor the State Board view this as a frivolous appeal. This case involves a serious point of community college governance on which it is not acceptable under the statute to allow the trial court ruling to stand. It does not involve merely the construction of a settlement agreement.
We stand ready to answer any further questions the Committee may have on this subject. The Assistant Attorney General directly in charge of the litigation is David Engdahl, Chief, Education Unit.
SUMMARY
College councils cannot override the will of the State Board for Community Colleges. Chief executive officer appointed by council, but disapproved by State Board, has no authority.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER STATUTES
C.R.S. 1973, 23-60-202
HIGHER EDUCATION, DEPT. OF Comm. Coll. Occ. Ed. Bd. LEGISLATIVE BRANCH Joint Budget Committee
College councils cannot override the will of the State Board for Community Colleges. Chief executive officer appointed by council, but disapproved by State Board, has no authority.